The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pfeiffer and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are correctly named in this matter. Plaintiff is James Charles Rackley, the employer is Coastal Painting and the carrier on the risk for workers compensation purposes is Companion Property Casualty Insurance Company.
2. Defendant-employer regularly employs three or more employees and is subject to and bound by the provisions of the North Carolina Workers Compensation Act.
3. On the date of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act and the Commission has jurisdiction over this matter.
4. On the date of the injury giving rise to this claim, plaintiffs average weekly wage was $204.54, which yields a weekly compensation rate of $136.36.
5. The depositions of Drs. Khaled Jreisat, John Liguori, Steven F. Karner, Richard Mark Toselli, and Robert Wilfong are a part of the evidentiary record in this matter.
6. In addition to the doctors depositions and any exhibits attached thereto, the parties stipulated into evidence in this matter the following exhibits: (1.) the pretrial agreement dated 10 May 1999; (2.) Form 18; (3.) Form 33; (4.) Form 33R; (5.) Form 61; (6.) plaintiffs responses to interrogatories; (7.) defendants responses to interrogatories; (8.) plaintiffs medical records; and (9.) plaintiffs 26 September 1996 recorded statement.
7. The issues are whether plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer, or whether plaintiffs accident and resulting injuries were the result of an idiopathic condition and if this claim is compensable, to what benefits is plaintiff entitled.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was twenty-four years old and following the 9 August 1996 accident had resided with family members in Florida since January 1997. Plaintiffs prior work history consists primarily of manual labor jobs. Plaintiff was not employed at the time of the hearing before the Deputy Commissioner but was in school at a community college studying biological science.
2. Prior to the accident on 9 August 1996, plaintiff had a pre-existing history of photoconvulsive and generalized epilepsy. Plaintiff was diagnosed with epilepsy after his first seizure occurred in 1990 when he was fifteen years old. Plaintiffs epileptic seizures were usually triggered by bright flashing or flickering lights, such as when he played video games.
3. After diagnosing plaintiff with epilepsy, Dr. Jreisat placed plaintiff on Dilantin, an anti-seizure medication. According to the medical history, plaintiffs seizures were generally well-controlled when he took the medication as directed. In fact, there is no indication that plaintiff ever suffered from a seizure when he was on the medication. However, plaintiff did have subsequent seizures, first when his doctor took him off the medication and later when he attempted to wean himself from the medication. Dr. Jreisat placed plaintiff back on medication, this time 200 milligrams of Tegretol three times a day, in 1993 after plaintiff suffered a seizure.
4. Plaintiff was hired by defendant-employer on 20 June 1996 as a painter. As part of his employment with defendant-employer, plaintiff painted both interiors and exteriors, primarily of private residences.
5. On 9 August 1996, plaintiff was employed by and working for defendant-employer when plaintiff and his coworkers, including the owner of the company, smoked marijuana in the van on the way to the jobsite. The van arrived at the jobsite around 8:30 a.m. Plaintiff placed a 32-foot ladder on a sand dune and against the house, climbed the ladder, and began painting the trim and fascia on the exterior of the third story of the building. While the sun was shining that day, there were no flashing or flickering lights present. Plaintiff had nothing to anchor himself onto the ladder, nor did he have anything other than the ladder to grab. In fact, when performing his painting duties on that day, plaintiff had to lean backwards and hold onto the ladder with his left hand while he painted with his right hand. Climbing and painting on a 32-foot ladder, particularly with no harness or other safety equipment, are inherently risky activities that are attributable to plaintiffs employment as a painter.
6. After plaintiff had painted in this posture for less than thirty minutes, he fell from the ladder, about thirty feet to the ground, landed on his head, and suffered a burst compression fracture at C5 with retropulsion, sustaining spinal cord dysfunction when bone fragments pushed back into the spinal canal and compressed his spinal cord. Consequently, plaintiff was immediately rendered a quadriplegic and is paralyzed from the nipples down.
7. Plaintiff has absolutely no recollection of his fall from the ladder. Plaintiff recalls painting for a short time while on the ladder that day and being somewhat nervous due to the height and lack of safety equipment. His next memory is of being on the ground on a sand dune after the fall and being unable to move his extremities. There were no witnesses to the fall, but after plaintiff was on the ground, several witnesses saw plaintiff shaking as though he were having a seizure. However, plaintiff did not exhibit other signs of a seizure such as drooling or vomiting, or any voiding of bodily waste and there was no sign of violent chewing on his tongue. No one witnessed plaintiff in an unconscious state. Although plaintiff told the emergency personnel who arrived on the scene that he may have had a seizure, he does not think he had one, due to the symptoms he had and did not have. In fact, plaintiff does not know what caused him to fall from the ladder.
8. Plaintiff was transported to New Hanover Regional Medical Center where he was treated by Dr. Wilfong, given high dose steroids and placed in a halo to stabilize his fracture. Approximately one month after the accident, plaintiff was transferred to the University of North Carolina Hospital where Dr. Toselli performed a fusion between plaintiffs C4 and C6 for reasons of stability and comfort. Plaintiff also underwent multidisciplinary rehabilitation at the direction of Dr. Liguori to try to increase his level of independence and functioning. Plaintiff underwent treatment by Dr. Melin, who removed plaintiffs halo after approximately four months and placed plaintiff in a Miami J collar. Plaintiff has also undergone urological treatment and still receives regular medical treatment relating to the injuries sustained on 9 August 1996. Furthermore, plaintiffs mother cares for him and provides home health care to plaintiff on a daily basis.
9. Defendants denied liability for plaintiffs claim for injuries as a result of his fall from the ladder by virtue of a Form 61 filed with the Commission on 17 October 1996.
10. According to the laboratory studies, plaintiff was noted to have a sub-therapeutic level of Tegretol in his system. Testing showed that plaintiff had a level of 2.5 micrograms per milliliter, whereas the therapeutic level of Tegretol is generally considered to be a range of 4 to 12 micrograms. This low level of Tegretol in plaintiffs system could be an indication that plaintiff was not taking his medication in the prescribed fashion of 200 milligrams three times per day. Plaintiff, however, was on his medication that day, despite the low level in his system.
11. One physician, Dr. Karner, a neurologist who specializes in epilepsy, testified that it is his opinion that plaintiff probably fell from the ladder as a result of having a seizure. It should be noted that Dr. Karner has neither examined nor spoken to plaintiff, but his opinion is based upon his review of plaintiffs medical records and plaintiffs recorded statement.
12. None of the other physicians deposed in this matter, including Dr. Jreisat, who has treated plaintiff for his epileptic condition since 1990, could state that plaintiff had a seizure that caused him to fall off the ladder on 9 August 1996. Instead, all physicians, including Dr. Jreisat, indicate that a seizure, if one occurred at all, could have occurred during plaintiffs fall or even once he was on the ground.
13. While Dr. Karner is an expert in epilepsy, his testimony is afforded less weight than is afforded to the testimony of the other physicians, primarily because he has never seen or even spoken with plaintiff. In addition, Dr. Karners opinion is not persuasive in showing that plaintiffs fall was solely caused by a seizure. Based upon all of the evidence, including the fact that plaintiff was taking Tegretol and had some in his system the morning of 9 August 1996, albeit at a low level; that never before had plaintiff had a seizure when he was taking his medication; that there were no bright, flashing lights that day that might have triggered a seizure; that no one witnessed his fall; that the only symptom of a seizure that plaintiff exhibited was shaking; and that the physicians involved in plaintiffs treatment and care either could not or would not say that plaintiffs fall from the ladder was caused by a seizure, the greater weight of the evidence does not show that an idiopathic condition, plaintiffs epilepsy, was the sole proximate cause of the injuries plaintiff sustained on 9 August 1996. The evidence, in fact, is unclear as to what actually caused plaintiff to fall from the ladder on 9 August 1996.
14. Plaintiffs injuries sustained as a result of his fall from the ladder on 9 August 1996 occurred in the course and scope of his employment with defendant-employer. Furthermore, special hazards attributable to or incidental to plaintiffs employment existed, and in fact were a contributing proximate cause of plaintiffs accident and resulting injuries. Therefore, plaintiffs injury arose out of plaintiffs employment, even though an idiopathic condition, epilepsy, may have contributed to the accident and resulting injury.
15. Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer on 9 August 1996. Plaintiff is incapable of earning any wages in any employment and is permanently and totally disabled as a result.
16. Defendants appealed to the Full Commission from an Opinion and Award favorable to plaintiff that is, by this decision, adopted by the Full Commission. Moreover, defendants have defended this claim without reasonable grounds.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiffs fall from the ladder on 9 August 1996 occurred in the course and scope of his employment with defendant-employer. N.C.G.S.97-2(6).
2. Hazards or risks incidental to plaintiffs employment existed, and were a contributing proximate cause of plaintiffs accident and resulting injuries. Therefore, plaintiffs injury arose out of plaintiffs employment, even though an idiopathic condition, epilepsy, may have contributed to the accident and, as a result, plaintiffs injury by accident is compensable under the Workers Compensation Act. N.C.G.S.97-2(6); Allred v. Allred-Gardner Inc., 253 N.C. 554, 557, 117 S.E.2d 476
(1960).
3. Plaintiff is permanently and totally disabled as a result of his compensable injury by accident on 9 August 1996, and is entitled to have defendants pay indemnity benefits for his lifetime. N.C.G.S. 97-29;97-31(17).
4. Plaintiff is entitled to have defendants provide all reasonably necessary medical treatment which tends to effect a cure or provide relief for plaintiffs lifetime. N.C.G.S. 97-2(19); 97-25; and 97-29.
5. Plaintiff is entitled to costs and attorneys fees for defendants unsuccessful appeal to the Full Commission from a favorable Award of the Deputy Commissioner as well as defendants unreasonable defense of this claim before the Deputy Commissioner and the Full Commission. N.C.G.S.97-88; 97-88.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to the attorneys fee awarded below, defendants shall pay plaintiff permanent total disability benefits at the weekly rate of $136.36 from 9 August 1996 through the present and continuing for the remainder of plaintiffs lifetime. All compensation that has accrued shall be paid in a lump sum.
2. Defendants shall provide plaintiff with all reasonably necessary medical treatment incurred or to be incurred due to the injuries sustained by him as a result of his compensable injury by accident for his lifetime so long as it tends to effect a cure or provide relief.
3. Counsel for plaintiff is entitled to a reasonable attorneys fee of twenty-five percent of the amount awarded herein. Accordingly, defendants shall forward directly to plaintiffs counsel of record twenty-five percent of the lump sum awarded plaintiff in paragraph one above. Thereafter, every fourth check shall be forwarded directly to plaintiffs counsel.
4. Furthermore, defendants shall pay costs and attorneys fees directly to plaintiffs counsel in the amount of $800.00 for their unsuccessful appeal to the Full Commission and their unreasonable defense of this claim.
5. If all of the expert witnesses have not been compensated for their deposition testimony in the matter, defendants shall notify the undersigned and provide invoices from the witnesses.
6. Defendants shall pay the costs of this proceeding due the Commission.
This the ___ day of May 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER